FILED
CLERK, U.S. DISTRICT COURT
JUL 23 2008
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERTA HARRIS,<br><br>       Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,[1]<br>Commissioner of Social Security,<br><br>       Defendant. | No. CV 06-7309-RC<br><br>OPINION AND ORDER |

Plaintiff Alberta Harris filed a complaint on November 15, 2006, seeking review of the Commissioner's decision denying her application for disability benefits. The Commissioner answered the complaint on May 21, 2007, and the parties filed a joint stipulation on July 17, 2007.

**BACKGROUND**

I

On October 4, 2004, plaintiff applied for disability benefits

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted as the defendant in the action.

under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, claiming an inability to work since December 31, 2003, due to a back injury, high blood pressure, vision problems, and a stroke. Certified Administrative Record ("A.R.") 32-36, 53. The plaintiff's application was initially denied on August 24, 2005. A.R. 22-26. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Walter Fisher ("the ALJ") on June 12, 2006. A.R. 27, 251-75. On July 25, 2006, the ALJ issued a decision finding plaintiff is not disabled. A.R. 276-84.[2] The plaintiff appealed this decision to the Appeals Council, which denied review on September 7, 2006. A.R. 6-10.

## II

The plaintiff, who was born on November 19, 1947, is currently 60 years old. A.R. 32. She has attended three years of college, and has previously worked as a supervisor and Medi-Cal technician. A.R. 54-55, 59, 256-58.

On May 11, 2000, Thomas A. Curtis, M.D., examined plaintiff, determined she was permanent and stationary,[3] and diagnosed her as

---

[2] The ALJ's decision is contained in an unnumbered supplemental administrative record, which the Court will number consecutively beginning at A.R. 276, where the certified administrative record ends.

[3] For workers' compensation purposes, "[p]ermanent and stationary status means an employee has improved medically as far as he will, or his condition has been stationary for a reasonable period of time." Robertson v. Workers' Comp. Appeals Bd., 112 Cal. App. 4th 893, 897, 5 Cal. Rptr. 3d 485 (2003); see also City of Martinez v. Workers' Compensation Appeals Board, 85 Cal. App. 4th 601, 609, 102 Cal. Rptr. 2d 588 (2000) ("[A] permanent

1  having an unspecified depressive disorder with anxiety, dementia due
2  to a medical condition (cerebrovascular accident) with only mild
3  cognitive residuals, and psychological factors affecting her physical
4  condition, including stress-intensified neck, shoulder and back muscle
5  tension and pain, high blood pressure and a stroke in December 1997.
6  A.R. 91-117.  Dr. Curtis opined plaintiff has a slight to slight-to-
7  moderate emotional impairment, consisting of a slight-to-moderate
8  impairment in her ability to relate to other people, and a slight
9  impairment in her ability to: comprehend and follow instructions;
10 perform simple and repetitive tasks; maintain work pace; perform
11 complex and varied tasks; influence people; generalize, evaluate, and
12 make independent decisions; and accept and carry out responsibility.
13 A.R. 112-13.

   On March 23, 2001, Curtis Blumfield, D.C., a chiropractor,
   examined plaintiff, diagnosed her with a cervical and lumbosacral
   spine sprain/strain with sciatica[4] to both legs, and opined plaintiff
   could perform her usual work.  A.R. 184-85.  Cervical spine x-rays
   revealed hypolordosis curvature while lumbosacral spine x-rays showed
   //
   //

---

disability rating cannot be calculated until an injured employee's medical condition is permanent and stationary.").

[4] Sciatica is "a syndrome characterized by pain radiating from the back into the buttock and into the lower extremity along its posterior or lateral aspect, and most commonly caused by protrusion of a low lumbar intervertebral disk; the term is also used to refer to pain anywhere along the course of the sciatic nerve." Dorland's Illustrated Medical Dictionary, 1609 (29th ed. 2000).

hypolordosis curvature, subluxations[5] at L5-S1 and disc wedging at L5-S1.  A.R. 185.  Dr. Blumfield continued to treat plaintiff through September 8, 2001, during which period plaintiff worked at full duties with no limitations.  A.R. 174-83.  On April 26, 2005, Dr. Blumfield reevaluated plaintiff, diagnosed her with cervical and lumbar disc syndrome and degenerative joint disease, and opined plaintiff was totally disabled and precluded from substantial work.  A.R. 172-73, 229-30.

On November 10, 2002, Michael D. Roback, M.D., an orthopedic surgeon, examined plaintiff, diagnosed her with chronic symptomatic, post-traumatic musculotendino-ligamentous lumbar spine injury with lower lumbar right and left posterior joint damage, and concluded plaintiff was permanent and stationary.  A.R. 153-56.

Between December 2, 2002, and September 4, 2006, plaintiff received treatment at Kaiser Permanente, where she was diagnosed with chronic back pain, degeneration of a lumbosacral intervertebral disc, a cervical spine sprain or strain, a lumbar spine strain, and trochanteric bursitis, among other conditions, and treated with physical therapy.  A.R. 167-69, 221-26, 231-43.  On October 12, 2005, plaintiff had a lumbar spine MRI, which revealed degenerative disc disease between L2-L3 with spurring but no evidence of focal disc protrusion and a synovial cyst involving the right facet joint between T12-L1 minimally widening the right intervertebral foramen.  A.R. 216-

---

[5] A subluxation is "an incomplete or partial dislocation." Dorland's Illustrated Medical Dictionary at 1719.

17, 222-23. On April 19, 2006, Jacqueline Van Hulst, a licensed clinical social worker, examined plaintiff, diagnosed her as having mild major depressive disorder, and determined plaintiff's Global Assessment of Functioning ("GAF") was 70.[6] A.R. 248. That same day, Robert M. Schmidt, M.D., examined plaintiff, diagnosed her with recurrent severe major depression, and determined plaintiff's GAF was 65. A.R. 246.

On June 3, 2005, Adi Klein, M.D., an internist, examined plaintiff and diagnosed her with a history of cerebrovascular accident with no subjective residuals, subjective cervical spine pain, and lumbar spine spondylosis.[7] A.R. 187-94. Dr. Klein opined plaintiff can lift and carry 50 pounds occasionally and 25 pounds frequently, can walk and stand for 6 hours in an 8-hour workday with appropriate breaks, and can sit for 6 hours in an 8-hour workday. A.R. 191.
//

---

[6] A GAF score reflects the clinician's judgment of the individual's overall level of psychological, social and occupational functioning, and not considering physical or environmental limitations. American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. (Text Revision) 2000); Langley v. Barnhart, 373 F.3d 1116, 1122-23 n.3 (10th Cir. 2004). A GAF of 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

[7] Spondylosis is "a general term for degenerative changes due to osteoarthritis." Dorland's Illustrated Medical Dictionary at 1684.

On June 27, 2005, A. Resnick, M.D., a nonexamining physician, opined plaintiff can occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, climb, balance, stoop, kneel, crouch, or crawl, and can sit, stand and/or walk for approximately 6 hours in an 8-hour workday. A.R. 196-205.

**DISCUSSION**

**III**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007).

"In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001). "Where the evidence can reasonably support either affirming or reversing the decision, [this Court] may not substitute [its] judgment for that of the Commissioner." Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); Lingenfelter, 504 F.3d at 1035.

The claimant is "disabled" for the purpose of receiving benefits

under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. § 404.1520. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. § 404.1520(c). If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. 20 C.F.R. § 404.1520(f). If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(g).

//

Moreover, where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments. Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914 (9th Cir. 1998) (per curiam). First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 C.F.R. § 404.1520a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(2-4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. § 404.1520a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 C.F.R. § 404.1520a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 404.1520a(c)(3)]." 20 C.F.R. § 404.1520a(d)(3), (e)(2).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since her alleged onset date. (Step One). The ALJ then found plaintiff has degenerative disc disease, sprain and strain of the cervical and

lumbar spine, obesity and hypertension, which are "severe" impairments; however, her mental impairment is not severe (Step Two), and she does not have an impairment or combination of impairments that meets or equals a Listing. (Step Three). The ALJ next determined plaintiff is able to perform her past relevant work; therefore, she is not disabled. (Step Four).

## IV

A claimant's residual functional capacity ("RFC") is what she can still do despite her physical, mental, nonexertional, and other limitations. Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). Here, the ALJ found plaintiff has the RFC to lift "25 pounds frequently and 50 pounds occasionally; . . . to stand and/or walk six hours in an eight-hour workday; and . . . to sit six hours in an eight-hour workday." A.R. 283. However, plaintiff contends the ALJ's findings are not supported by substantial evidence because the ALJ did not properly assess her mental impairment and improperly rejected the opinion of Dr. Blumfield, her treating chiropractor.

### A. Mental Impairment:

Social Security regulations no longer require the ALJ complete a Psychiatric Review Technique Form and append it to the written decision. 20 C.F.R. § 404.1520a(e)(2). Nevertheless, where there is a colorable claim of a mental impairment,[8] the ALJ must rate as

---

[8] A "colorable" claim is a claim that is not "wholly insubstantial, immaterial, or frivolous." Rolen v. Barnhart, 273 F.3d 1189, 1191 (9th Cir. 2001) (citations omitted), cert.

"none," "mild," "moderate," "marked," or "extreme" the claimant's functional limitations in the areas of daily activities, social functioning, and concentration, persistence or pace, and also rate as none, one or two, three, or four or more the claimant's episodes of decompensation, and such ratings **must** be included in the ALJ's written decision. 20 C.F.R. § 404.1520a(c)(3-4), (e)(2); Behn v. Barnhart, 463 F. Supp. 2d 1043, 1047 (C.D. Cal. 2006).

Here, the ALJ found plaintiff does not have "any significantly limiting mental impairment[,]" A.R. 282, and this finding is supported by substantial evidence in the record. Specifically, there is no medical evidence showing that, since her alleged onset date of December 31, 2003, plaintiff has experienced a mental condition that in any manner affects her ability to perform basic work activities.[9] To the contrary, plaintiff's most recent mental evaluation shows that, although she was depressed, she had a normal and appropriate affect, her speech was normal, her thought process was coherent, relevant and logical, she was alert, clear, oriented to person, place, time and situation, her memory was intact to immediate, recent, and remote

---

denied, 537 U.S. 818 (2002); Cassim v. Bowen, 824 F.2d 791, 795 (9th Cir. 1987).

[9] Although Dr. Curtis found plaintiff had "slight" limitations in her ability to perform various mental work-related functions on May 11, 2000, plaintiff continued to work at her job without restrictions, A.R. 114, and did not seek any other mental health treatment until almost six years later, when, as discussed below, she was found to be functioning pretty well. Thus, the ALJ properly found Dr. Curtis's opinion "is not relevant to the period at issue in the instant claim[,]" A.R. 282, and the Court agrees. Indeed, even as late as 2005, plaintiff reported she had no functional limitations as the result of any mental problem. A.R. 78, 207, 210.

recall, her concentration was normal, her insight was good, her judgment was unimpaired, and she had no risk factors, and the ALJ specifically cited this evaluation in determining plaintiff does not have a severe mental impairment. Moreover, in her most recent mental evaluation, it was also determined that plaintiff's GAF was between 65 and 70, which means she was generally functioning pretty well. American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u>, 34 (4th ed. (Text Revision) 2000). Since plaintiff "submitted no evidence that [her] depression prevents [her] from working[,]" substantial evidence supports the ALJ's Step Two determination that plaintiff's mental impairment is not severe.[10] <u>Salerno v. Astrue</u>, 266 Fed. Appx. 570, 573 (9th Cir. 2008) (Unpublished Disposition).[11]

### B. Chiropractic Evidence:

On April 26, 2005, Dr. Blumfield opined plaintiff was totally disabled and precluded from substantial work. However, the ALJ rejected Dr. Blumfield's opinion, stating:

//

---

[10] Nevertheless, plaintiff also contends "[t]he ALJ should have ordered a consultative psychological evaluation and should have enlisted the services of a medical expert[,]" citing 42 U.S.C. § 421(h) to support this claim. Jt. Stip. at 4:19-23. However, Section 421(h) does not apply to administrative hearings before ALJs. See <u>Plummer v. Apfel</u>, 186 F.3d 422, 433 (3d Cir. 1999) ("Because 42 U.S.C. § 421(d), which covers hearings before an ALJ, is excluded from § 421(h)'s purview, an ALJ is not required to employ the assistance of a qualified psychiatrist or psychologist in making an initial determination of mental impairment."). Thus, there is no merit to this claim either.

[11] <u>See</u> Fed. R. App. P. 32.1(a); Ninth Circuit Rule 36-3(b).

> [A]n assessment of "disability" is reserved to the Commissioner. In addition, a chiropractor is not an "acceptable" medical source, as defined by the Social Security Administration. Otherwise, Dr. Blumfield seems to uncritically endorse the [plaintiff's] subjective complaints, in particular, in consideration of the scant objective evidence of impairment shown on the consultative examination [of Dr. Klein]. Thus, Dr. Blumfield's opinions are rejected.

A.R. 282.

As the ALJ held, a chiropractor is not an acceptable medical source, and "there is no requirement that the [Commissioner] accept or specifically refute such evidence." Bunnell v. Sullivan, 912 F.2d 1149, 1152 (9th Cir. 1990), reversed on other grounds, Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) (en banc); 20 C.F.R. § 404.1513(a), (e). On the other hand, a chiropractor is another source, 20 C.F.R. § 404.1513(d)(1), which the ALJ should consider, 20 C.F.R. § 404.1513(d)(3), and which the ALJ can only reject if he "gives reasons germane . . . for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Parra, 481 F.3d at 750; see also Diaz v. Shalala, 59 F.3d 307, 313-14 (2d Cir. 1995) ("[A] chiropractor's opinion is *not* a medical opinion. . . . [¶] [Rather,] . . . the ALJ has the discretion to determine the appropriate weight to accord the chiropractor's opinion based on all the evidence before him. . . ." (emphasis in original)). Here the ALJ gave a specific and germane reason for rejecting Dr. Blumfield's opinion, noting Dr. Blumfield's

opinion was based only on plaintiff's subjective complaints and was contradicted by the opinion of Dr. Klein, and this reason is supported by substantial evidence. Therefore, the ALJ properly rejected Dr. Blumfield's opinion, Barnett v. Apfel, 231 F.3d 687, 690 (10th Cir. 2000); Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999), and substantial evidence supports the ALJ's Step Four determination that plaintiff has the RFC to perform her past relevant work.

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

DATE: July 23, 2008

ROSALYN M. CHAPMAN
UNITED STATES MAGISTRATE JUDGE

R&R-MDO\06-7309.mdo
7/23/08